UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

RAFAEL ALMONTE,

                            Debtor.
----------------------------------------------------------------x

FOR PUBLICATION

Case No. 808-74084-reg

Chapter 13

## MEMORANDUM DECISION

Before the Court is an objection by the Chapter 13 Trustee to confirmation of the Debtor's Chapter 13 plan. The Trustee argues that the Debtor's "current monthly income" used for purposes of determining the Debtor's "projected disposable income" under Section 1325(b)(1)(B), must include income from all sources other than as specifically excluded by the relevant statutes. Therefore, the Debtor must include $23,900 in credit card cash advances taken by the Debtor within the six months prior to bankruptcy.[1] For the reasons that follow, the Trustee's objection is overruled.

### *Background*

The Debtor, Rafael Almonte (the "Debtor"), filed a Chapter 13 petition on July 30, 2008. Along with the petition, the Debtor filed Official Form B22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" ("Form B22C" also known as the chapter 13 "means test"). Form B22C shows that the Debtor has "current

---

[1] This Memorandum Decision addresses only the Trustee's challenge to the Debtor's statement of current monthly income. The remainder of the Trustee's objections to confirmation will be addressed at a subsequent hearing.

monthly income" equal to $7,343, including his and his non-filing spouse's salaries, rental income and a 2007 tax refund. (*See* Lines 20 and 53 of Form B22C). According to the deductions from income allowable by Form B22C, the Debtor has $336.27 in monthly disposable income that must be committed to his Chapter 13 plan. Because the Debtor's annualized current monthly income, $93,156.00 (Line 15), is greater than the applicable median family income for a household of the same size as the Debtor's, $84,564 (Line 16), the Debtor is required to commit his disposable income for a period of five years (Line 17). *See* 11 U.S.C. § 1325(b)(4).

On August 11, 2008, the Debtor filed a Chapter 13 plan (the "Plan") which proposed to pay $337 per month for 60 months which would, according to the Debtor, result in a 25% distribution to general unsecured creditors.[2]

Prior to the confirmation hearing, the Chapter 13 Trustee, Michael J. Macco (the "Trustee"), filed an objection to plan confirmation alleging several infirmities in the Plan. Relevant to this Memorandum Decision, the Trustee says that he compared the Debtor's bank statements and pay stubs to the income reported in the Debtor's Form B22C means test and believes that the Debtor under-reported his current monthly income on Form B22C. According to the Trustee, the Debtor's bank statement show deposits into his bank account which exceed the current monthly income figure provided on Form B22C. The Trustee has attributed the

---

[2] The Debtor filed a First Amended Chapter 13 Plan on November 14, 2008, which proposes to pay $337 per month from August 2008 to November 2008 (4 months), and $427 from December 2008 through and including July 2013 (56 months). It is not clear from the docket what prompted the filing of the amended plan or why the plan payments were increased, but in any event, the $90 increase does not address the $23,900 shortfall at issue in this Memorandum Decision.

excess income reflected in the Debtor's bank deposits to three credit card cash advances totaling $23,900.00 taken by the Debtor within the six months prior to the filing of the petition. The Debtor did not include these proceeds in his current monthly income and took the position that the subject proceeds are proceeds of a loan and are therefore not properly characterized as income at all. The Debtor's position is that because we are not dealing with "income" the proceeds need not be included in "current monthly income." The Trustee disagrees and maintains that the term "income" as used in the statute is much broader than perhaps a traditional definition of income. He argues that when calculating income under the means test "income" means cash proceeds from all sources regardless of whether the income is taxable. *See* 11 U.S.C. §101 (10A)(A). The Trustee argues that, according to the definition of "current monthly income" under Section 101(10A)(B) of the Bankruptcy Code, the only exclusions from current monthly income are social security benefits, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international or domestic terrorism on account of their status as victims of such terrorism. *See* 11 U.S.C. §101(10A)(B). As a result, the Trustee maintains that the Debtor's receipt of funds from credit card cash advances must be included in "current monthly income," unless specifically excluded under the statute.

The Debtor filed a written response to the Trustee's objection and admits that on or about February 15, 2008, within the 6-month period prior to filing bankruptcy, he took cash advances of funds from convenience checks totaling $23,900.00, in three installments: $5,800.00; $8,500.00; and $9.600.00. Absent finding any specific definition of "income" either in the

statute or caselaw, the Debtor asks the Court to define "income" according to the Black's Law Dictionary, *i.e.,* "the return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc." Black's Law Dictionary 763 (6th Ed. 1990). *See also In re Marti*, 393 B.R. 697 (Bankr. Neb. 2008); *In re Breeding*, 366 B.R. 21, 25 (Bankr. E.D. Ark. 2007); *Zahn v. Fink (In re Zahn)*, 391 B.R. 840, 845 (8th Cir. BAP 2008). The Debtor also argues that the Court should utilize, by analogy, the definition of "income" as interpreted under the Internal Revenue Code, which definition includes "compensation for services, business earnings, gains on dealing in property, interest, rents, royalties, dividends, alimony and maintenance, pensions, prizes and awards and unemployment compensation." *In re Warren*, 2007 Bankr. LEXIS 3434 (Bankr. Mont. 2007); *see e.g., In re Curcio*, 387 B.R. 278 (Bankr. N.D. Fla. 2008) (finding that tax refund should not be included in current monthly income because it is not "income" under the Internal Revenue Code). The Debtor concludes that the funds he derived from cash advances or convenience checks are not properly classified as "income" and therefore should not be included in "current monthly income." The Debtor therefore argues that the Trustee's objection must be overruled because the Debtor has properly calculated "disposable income" as set forth in the statute.

### *Discussion*

The Trustee attempts to frame the issue before the Court as simply – should a credit card cash advance be included in a debtor's "current monthly income" calculation for purposes of determining the Debtor's "disposable income" to be devoted to the Chapter 13 plan?

Nevertheless, the Trustee has presented to the Court for its consideration a much more fundamental question of statutory interpretation. The Trustee is taking the position that all cash proceeds received by the Debtor within six months of the filing of the Chapter 13 petition, derived from any source, except as specifically excluded under the statute must be included in the Debtor's "current monthly income" calculation. The Debtor argues that this Court has the discretion to make a determination that the subject proceeds are not "income." The Debtor argues that the Court can find that these proceeds are the proceeds of a loan and therefore need not be included in "current monthly income" on the Form B22C means test.

To begin the analysis, the Court finds it is necessary to read the definition of "current monthly income" in the context of the entirety of Section 1325 and the Bankruptcy Code and its fundamental principles. When viewed in context, "current monthly income" is but a starting point to reach "projected disposable income" under Section 1325(b)(1)(B). Even if the Court were to determine that credit card cash advances are "income," such a finding does not eliminate the need for the Court to find that the advances fit within the meaning of the term "projected disposable income" in order to sustain the Trustee's objection. Therefore, without deciding the narrow issue presented, the Court will assume, for purposes of the following statutory analysis, that cash advances are "income."

Section 1325 of the Bankruptcy Code provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the court may not approve the plan unless,

> . . . as of the effective date of the plan--
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; *or*

> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B) (emphasis added).

Although the term "projected disposable income" is not defined by the Bankruptcy Code, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") enacted a modified and more detailed definition of "disposable income." Prior to BAPCPA, a debtor's projected disposable income figures were derived from actual income and expenses on Schedules I and J. "Disposable income is now defined as,

> *. .. current monthly income received by the debtor* (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) *less amounts reasonably necessary to be expended*--
>
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) [FN1] to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (emphasis added).

This leads one to the newly-enacted definition of "current monthly income" found in Section 101(10A):

> The term "current monthly income"--
>
> (A) means the *average monthly income from all sources that the debtor receives* (or in a joint case the debtor and the debtor's spouse receive) *without regard to whether such income is taxable income, derived during the 6-month period ending* on--
>
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. §101(10A) (emphasis added).

Therefore, under Section 1325(b), "disposable income" is the same as a debtor's historic 6-month pre-petition "current monthly income," less child support, foster care and certain disability payments. But that is not the end of the analysis. In the face of an objection by the chapter 13 trustee, a court may not confirm a chapter 13 plan unless the debtor's plan provides that all "projected" disposable income to be received in the applicable commitment period is paid to unsecured creditors. This Court is not the first to recognize the discrete differences among "current monthly income," "disposable income," and "projected disposable income," and grapple

with the imprecise language of this statute. Although there is a significant body of caselaw on this issue (including conflicting results within the lower courts of the Second Circuit)[3], there does not appear to be any decision on this question in this District.

### *The "crystal ball" approach*

In a recent decision, the Tenth Circuit Court of Appeals held that a debtor's current monthly income is a starting point for calculating projected disposable income, subject to a showing of "substantial change in circumstances." *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269 (10th Cir. 2008). In *Lanning*, the debtor took a buyout from her employer within the six months prior to her bankruptcy filing which greatly inflated her monthly gross income for a 2-month period. When she filed, the debtor's Schedules I and J reflected actual income from her current employment and actual expenses, leaving excess monthly income equal to $149.03. When she completed Form B22C including her 6-month historic current monthly income and IRS standard deductions, however, the debtor showed a fictional $1,114.98 in monthly disposable income which needed to be committed to her chapter 13 plan. The debtor's chapter 13 plan proposed to pay $149.03 to creditors. The chapter 13 trustee objected arguing that Form B22C requires a rigid determination of projected disposable income based upon historic "current monthly income" figures.

---

[3] *Compare In re Soto*, 351 B.R. 56 (Bankr. W.D.N.Y. 2006) (holding that actual income in excess of current monthly income from Form B22C must be devoted to the plan), *with In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007) (finding that "projected disposable income" does not take into account actual post-petition income).

Affirming the bankruptcy court and bankruptcy appellate panel, the Tenth Circuit declined to adopt the chapter 13 trustee's mechanical approach to a projected disposable income analysis. The court recognized that a mechanical calculation of disposable income based upon historical income figures "would be a fiction if, as of the effective date of the plan, the debtor had no realistic expectation of earning enough to produce the amount of 'disposable income' calculated on Form B22C." *Lanning*, 545 F.3d at 1280. The court found that applying a mechanical approach which relies only on historic "current monthly income" would give little heed to forward-looking references in Section 1325(b) such as the phrases "as of the effective date of the plan," "projected disposable income," "to be received in the applicable commitment period," and "will be applied to make payments." *Lanning*, 545 F.3d at 1279-80. The court also noted that the relevant line items of Form B22C refer only to "disposable income," not "projected disposable income," which is the ultimate requirement to be met under Section 1325(b)(1). Ultimately, the *Lanning* court held that "as to the income side of the § 1325(b)(1)(B), the starting point for calculating the Chapter 13 debtor's "projected disposable income" is presumed to be the debtor's "current monthly income," as defined in 11 U.S.C. §101(10A)(I), subject to a showing of a substantial change in circumstances." *Lanning*, 545 F.3d at 1282.

Prior to *Lanning*, several courts had already adopted the forward-looking, a/k/a "crystal ball" approach to projected disposable income under Section 1325(b)(1). *See, e.g.*, *Coop v. Frederickson* (*In re Frederickson*), 545 F.3d 652 (8th Cir. 2008); *Hildebrand v. Petro (In re Petro)*, 395 B.R. 369 (6th Cir. BAP 2008); *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302 (1st Cir.

BAP 2007)*; eCast Settlement Corp. v. May (In re May)*, 381 B.R. 498 (Bankr. W.D. Pa. 2008); *In re French*, 383 B.R. 402 (Bankr. W.D. Ky. 2008); *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007); *In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006).

When the First Circuit Bankruptcy Appellate Panel in *In re Kibbe* adopted the crystal ball approach it explained:

> Attaching the word "projected" to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise. Insofar as the term "disposable income" demands a look back and the term "projected" requires a look forward, the language is irreconcilable. ... One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both.

*In re Kibbe*, 361 B.R. at 313 (footnote omitted).

The court in *In re Kibbe*, also examined the legislative history of the BAPCPA and noted that Congressional intent was to ensure that debtors repay to their unsecured creditors what they can afford. *Id*. at 314.

Therefore, the crystal ball approach to "projected disposable income" arguably furthers Congress's intent that a debtor commit disposable income to repayment of creditors without leading to the absurd result that a debtor be required to repay more than they can afford, or an equally unintended result that a debtor who *has* post-petition disposable income need not commit that disposable income to the repayment of unsecured creditors because they had little or no disposable income prior to the petition date. This latter scenario was presented to the Ninth

Circuit Court of Appeals in the case of *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008).

*The "rear view mirror" approach*

In *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008), the Ninth Circuit Court of Appeals held that a debtor's "projected disposable income" under Section 1325(b) is not a forward-looking concept, but rather is synonymous with "disposable income" which is defined only in terms of historic income figures. This mechanical approach to the statute has also been called the "rear view mirror" approach. In *Kagenveama*, the debtor's Schedule I listed monthly gross income of $6,168.21 (approximately $74,000 annually), and monthly net income of $4,096.26. Schedule J listed actual expenses of $2,572.37, leaving $1,523.89 in actual monthly disposable income. The debtor filed Form B22C which showed that the debtor had the same $6,168.21 monthly gross income for the six months prior to filing. However, because she was deemed an "above-median" income debtor, Section 1325(b)(3) required her to take standardized deductions pursuant to Section 707(b)(2).[4] When calculated using the standardized deductions, Form B22C showed that the debtor had a negative -$4.04 in disposable income. As such, the debtor was not required, under the strict application of the statute, to devote any of her actual disposable income during the life of the plan to repayment of unsecured creditors. Nonetheless, the debtor proposed a plan which paid $1,000 per month for three years, which

---

[4] *See* 11 U.S.C. §1325(b)(4).

would yield a $9,444.38 dividend to unsecured creditors. The chapter 13 trustee objected to the plan arguing that the "applicable commitment period" of the plan should be five years, not three. Affirming the bankruptcy court on a direct appeal, the Ninth Circuit overruled the trustee's objection on the basis that the debtor had no "projected disposable income" and therefore no obligation to propose a five year commitment period. In so holding, the court adhered to a strict reading of the statute and Form B22C which finds that a debtor's historic 6-month income must be used to calculate the debtor's projected disposable income to be committed to the chapter 13 plan. The court stated:

> Reading the statute as requiring "disposable income," as defined in subsection (b)(2), to be projected out over the "applicable commitment period" to derive the "projected disposable income" amount is the most natural reading of the statute, and it is the one we adopt.
>
> . . .
>
> Courts must give meaning to every clause and word of a statute. *Negonsott v. Samuels*, 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Section 1325 uses the term "disposable income" in only two places- § 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income"). The substitution of any data not covered by the § 1325(b)(2) definition in the "projected disposable income" calculation would render as surplusage the definition of "disposable income" found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B). "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *In re Alexander*, 344 B.R. 742, 749 (Bankr.E.D.N.C.2006). The plain meaning of the word "projected," in and of itself, does not provide a basis for including other data in the calculation because "projected" is simply a modifier of the defined term "disposable income." Therefore, to give meaning to every word of § 1325(b), "disposable income," as defined in § 1325(b)(2), must be "projected" in order to derive "projected disposable income."

*Kagenveama*, 541 F.3d at 872-73.

The result of the "rear view mirror" approach under the facts of *Kagenveama* is that the debtor with actual disposable income during the life of the chapter 13 plan has no obligation to use that money to repay unsecured creditors. According to the Ninth Circuit if that is an unjust result, it is for Congress to remedy, not the courts. Several other courts have adopted the rear view mirror approach to disposable income. *See, e.g.*, *Mancl v. Chatterton (In re Mancl)*, 381 B.R. 537 (W.D.Wis. 2008) (reversing the bankruptcy court and finding that "projected disposable income" was not a term having independent significance apart from the statutorily-defined term "disposable income," but was simply debtors' "disposable income" projected forward over the term of their plan); *Musselman v. eCast Settlement Corp. (In re Musselman)*, 394 B.R. 801 (E.D.N.C. 2008); *In re Greer*, 388 B.R. 889 (Bankr. C.D. Ill. 2008); *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006); *In re Nance*, 371 B.R. 358 (Bankr. S.D. Ill. 2007); *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007); *In re Kolb*, 366 B.R. 802 (Bankr. S.D. Ohio 2007); *In re Miller*, 361 B.R. 224 (Bankr. N.D. Ala. 2007); *In re Tranmer,* 355 B.R. 234 (Bankr. D. Mont. 2006); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D.N.Y. 2006).

*Analysis*

It is axiomatic that the Court must look to the clear meaning of the statute. If the meaning is clear then the Court has no discretion but to follow the mandates as written by Congress. However, the difficulty arises when a statute is ambiguous or where specific sections seem to be at odds with each other. The divergent views and interpretations of Section 1325(b)'s "projected

disposable income" evidenced by the "crystal ball" and "rear view mirror" approaches are both good faith attempts to resolve this question in a manner that is consistent with the intent of the statute.

Returning to the facts of the case at hand, as the Court has previously noted, the implications of this case go beyond whether a credit card cash advance should be considered "income" under the definition of "current monthly income." Even if the Court were to hold that credit card cash advances, *i.e.*, the incurrence of debt, are "income" under the Trustee's broad interpretation of the statute, this Court would hold that they should not be included in "projected disposable income" under Section 1325(b)(1).

For all of the reasons stated in *Lanning* and the other forward-looking cases, this Court believes that the line of cases adopting the "crystal ball" approach to projected disposable income is the correct interpretation of the statute when an objection to confirmation is filed under Section 1325(b). In other words, if the chapter 13 trustee or an unsecured creditor objects to confirmation, the calculation of "disposable income" under Section 1325(b) and Form B22C is but a starting point in reaching the debtor's "projected disposable income." If a debtor's "disposable income" on Form B22C differs from the debtor's actual monthly disposable income reported on Schedules I and J, the Court may analyze the debtor's actual projected income over the life of the plan in order to avoid a result which the Court believes is inconsistent with two fundamental bankruptcy principles; that is, giving the honest but unfortunate debtor a "fresh start," and requiring a chapter 13 debtor to repay creditors what he can afford from his post-petition earnings. Indeed, an "honest but unfortunate" debtor with above-median income could be precluded from both chapter

7 *and* chapter 13 relief if that debtor's actual monthly disposable income is not factored into the calculation of "projected disposable income." *See Lanning*, 545 F.3d at 1281 (finding that "... when an above-median debtor has Form B22C disposable income under the means test, she will not qualify for Chapter 7 protection. But when that debtor seeks Chapter 13 protection and no longer earns her prepetition income, she will be unable to confirm a plan over objection if bound to historical income and the mechanical approach to § 1325(b)(1)(B).").

Absent binding authority in this Circuit, this Court is not prepared to adopt an application of the statute which would result in a debtor either: (a) being precluded from chapter 13 relief because a mechanical application of Form B22C would create fictional monthly disposable income that the debtor does not have, or (b) allow the debtor to withhold actual monthly disposable income from repayment to unsecured creditors because his or her historic income figures are lower than actual projected figures.

If the Court were to include credit card cash advances taken within the six months preceding bankruptcy within this Debtor's "projected disposable income," it would commit to the plan funds which the Debtor would not reasonably be expected to have during the life of the case. It would be absurd to assume that the Debtor would continue to take cash advances in order to fund his chapter 13 plan, and the Court is not prepared to require that result.

### *Conclusion*

For the foregoing reasons, the Chapter 13 Trustee's objection to plan confirmation based on the Debtor's failure to include "income" from credit card cash advances in his "projected

disposable income" to be committed to repayment of unsecured creditors is overruled.  The Court will consider the remainder of the Trustee's objections to confirmation at the adjourned confirmation hearing scheduled for December 18, 2008 at 9:30 a.m.

      An Order consistent with this Memorandum Decision will issue forthwith.

Dated: Central Islip, New York
      December 8, 2008                           */s/ Robert E. Grossman*
                                                                                Robert E. Grossman
                                                                                United States Bankruptcy Judge